IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA JONES, | ) |
|     Plaintiff | ) C.A. NO. |
| v. | ) |
| BETHEL PARK SCHOOL DISTRICT, and JOSEPH PASQUERILLA, | ) Jury Trial Demanded |
|     Defendants | ) |

## COMPLAINT

Lisa Jones, the Plaintiff, sets for the following in support of her Complaint against the Defendants, Bethel Park School District and Joseph Pasquerilla.

### STATEMENT OF THE COURT'S JURISDICTION

1.  This court has jurisdiction over this matter by virtue of 28 U.S.C. §1331 and 29 U.S.C. §623 and §626. Jones sets forth claims under 42 U.S.C. §1983 against the Defendants. They have violated Jones' right to procedural due process as guaranteed by the 14th Amendment of the United States Constitution. Jones also states claims under the Age Discrimination in Employment Act, 29 U.S.C. §623, et seq.

### IDENTIFICATION OF THE PARTIES

2.  Lisa Jones is an adult individual who resides in the Western District of Pennsylvania.

3.  Bethel Park School District (herein District) is a governmental entity that provides a free public education to school age students who reside within its confines.

1

4.  Joseph Pasquerilla is the Superintendent of the Bethel Park School District. He occupies the most authoritative administrative position within the District. He is charged with implementing District policy and is responsible for all aspects of the operation of the District's functions and activities.

## STATEMENT OF FACTS

5.  In Pennsylvania, once a teacher has secured tenure, she has significant job protection. This protection even extends to the right not to be suspended or demoted without cause. The only causes which can justify a demotion or suspension are enumerated in 24 P.S. § 11-1124. Additionally, the steps a school district must follow when selecting who will be demoted and the circumstances under which a demoted person must be re-instated are strictly governed by the Public School Code (24 P.S. § 11-1125.1).

6.  Jones, who was born in 1975, is a tenured professional employee of the District.

7.  Jones began working for the District as a long-term substitute in the 1999-2000 school year and was hired full-time for the 2000-2001 school year.

8.  During the first 6 years of her employment with the District, Jones worked as a full-time elementary gifted education teacher.

9.  She exercised her right to voluntary transfer to a full-time kindergarten position and continued to hold that position until 2011.

10. In 2011, there was a District reorganization pursuant to 24 P.S. § 11-1124, which resulted in the need to demote an employee. As a result of this reorganization, Jones was demoted to part-time professional employee status.

Jones accepted the demotion and did not contest it, even though she was not the least senior person in the area involved in the reorganization. The demotion was not, in any way, associated with Jones' performance.

11. The process by which a particular tenured professional employee may be selected for demotion or suspension is set out by the legislature in the Pennsylvania Public School Code. 24 P.S. § 11-1125.1.

12. As set out in § 11-1125.1, the selection of employees to be demoted or suspended is based on performance under section (a) and seniority under section (a.1).

13. Since the demotion, Jones has continued to teach kindergarten for the District, but only on a part-time basis, as she remains on demoted status. Jones has always been an excellent employee and her ratings reflect that fact. Given the length of her employment, Jones has acquired significant seniority within the District.

14. The Public School Code governs not only when and under what circumstances a demotion or suspension of a tenured employee can occur, but also when a demoted or suspended employee must be recalled to their former or comparable position.

15. In relevant part, § 11-1125.1 of the Public School Code provides as follows:

> (c) A school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes.
> * * *

(d)(2) Suspended professional employes or professional employes demoted for the reasons set forth in section 1124 shall be reinstated on the basis of their seniority within the school entity. *No new appointment shall be made while there is such a suspended or demoted professional employe available who is properly certificated to fill such vacancy.* (Emphasis supplied)

16. As construed by the Pennsylvania Courts, this provision of the Public School Code mandates that a school district must ensure the more senior suspended or demoted employees be given priority whenever a school district makes any appointment of professional employees. *Bennet, v. Central Montgomery County Area,* 714 A2d 623, 624 (Pa. 1997); See also *Dallap v. Sharon City School District,* 571 A.2d 368 (Pa. 1990). ("[I]n undertaking a realignment prompted by declining enrollment, school districts have no choice but to replace less senior employees with more senior ones who carry proper certification.") Similarly, "[s]ection 1125.1(d)(2) precludes new appointments when 'there is a suspended or demoted professional employee available who is properly certificated to fill such vacancy' and who has seniority.'" *Bennet,* 704 A.2d at 626. *Colonial Education Association v. Colonial School District*, 644 A2d 211, 214 (1994) ("[W]hen a vacancy occurs, the District must fill that vacancy based on seniority, recalling a properly certificated suspended employee with seniority prior to assigning an active teacher with less seniority to fill that vacancy. In other words, regardless of a professional employee's active or suspended status, a District must provide a more-senior, properly certificated professional employer the opportunity to fill a vacant position prior to assigning a less-senior teacher to that position.")

17. As a consequence of § 11-1125.1 and settled judicial interpretation of the law, Jones has a legislatively created, court recognized, property interest in being restored to a full time position, prior to the District making any appointment to fill a position for which Jones has proper certification.

18. The District, however, has failed to comply with § 11-1125.1(d)(2) of the Public School Code as interpreted by the Pennsylvania Courts with respect to its treatment of Jones.

19. On numerous occasions since she was demoted, the District has reassigned and appointed less senior teachers to positions for which Jones was properly certificated.

20. The District has accomplished this deprivation deliberately and by subterfuge, and in the absence of providing notice to Jones that it is depriving her of the property interest to be reinstated to a full time position.

21. On many occasions since her demotion, the District has closed positions and then transferred and appointed the occupant of that position to a different position, which was vacated by retirement or resignation, or by virtue of shifting class sizes in a particular grade, without posting the vacancy, or advising Jones that a vacancy exists. It has conducted these transactions in a secretive fashion, in the absence of posting open positions. On one occasion it also hired a new teacher from outside the District and appointed her to a vacant position. Following her demotion, the District has repeatedly appointed teachers with less seniority than Jones to vacant positions for which she possesses the requisite

certification, without ever notifying her that it was bypassing and ignoring her interest in being re-instated to a full time position.

22. The District has attempted to cover its misconduct relative to depriving Jones of her right to reinstatement by virtue of the provisions of a Collective Bargaining Agreement (hereinafter "CBA") with the Bethel Park Federation of Teachers, Local 1607 (hereafter Local 1607). That CBA contains provisions that are inconsistent with the Public School Code, § 11-1125.1. .

23. Indeed, the CBA with Local 1607 provides for a different outcome than that called for by the Public School Code, as Article 47.10 of the CBA provides, that "[a]ny professional employee who is furloughed shall have recall rights into his area of certification *before any new teacher is hired*…" (emphasis supplied) In other words, the District has crafted the CBA to signify that it has no obligation to place Jones in any position, unless it is being forced to hire a new employee off the street.

24. However, (g)(1) and (2) of 24 P.S. §11-1125.1, provide that:

> (1) No collective bargaining agreement *negotiated… after the effective date of this subsection* shall provide for suspending, reinstating or realigning professional employes based on seniority other than as provided for in this section.
>
> (2) Upon the expiration, amendment or adoption of any agreement or contract, a provision that provides for suspending, reinstating or realigning professional employes based on seniority in conflict with section 1124 or this section shall be discontinued in any new or renewed agreement or contract or during the period of status quo following an expired contract.

24 P.S. § 11-1125.1 (g) (1) and (2).

6

In other words, § 11-1125.1 creates a non-waivable process centered on seniority that supersedes a collective bargaining agreement, which is inconsistent with the statute.

25.  Nevertheless, under the guise of utilizing the provisions of its CBA with Local 1607 the District essentially concealed its failure to recognize Jones' legislatively created property interest in being reinstated to a full time position for many years.  It accomplished the concealment in part, by declining to post vacancies.

26.  Jones became specifically aware of the District's non-compliance with 24 P.S. § 11-1125.1 during the Spring of 2018.  The District posted a vacancy, and Jones applied.  Jones was the most senior demoted candidate seeking the vacancy, but the District refused to place her in the vacant position.  Instead, it chose a younger, less senior person to be appointed to the position.

27.  Jones challenged the District's decision, and asserted that the District had violated 24 P.S. § 11-1125.1.  She requested a hearing, but the District refused to grant her a hearing.

28.  Jones' challenge of the District's action in 2018 prompted the District to revert to subterfuge and concealment when filling positions in 2019.  The District entered into a Memorandum of Understanding with Local 1607 on February 26, 2019, which specifically authorizes the District to fill vacant positions by offering those positions to selected employees, who were to be displaced, or according to the terminology of the CBA, "involuntarily transferred" *for the up-coming school year.* Involuntarily transferred teachers are those whose current positions have

been closed out for one reason or another. Specifically, the February 26, 2019 Memorandum of Understanding states that vacancies will not be posted until "involuntarily transferred" teachers are given an opportunity to select a vacant position. Specifically, it states:

> For grades 4 through K, all involuntarily transferred teachers will choose an open position in order of seniority and *any vacancies existing thereafter shall be posted* pursuant to the language of Article 13. (Emphasis supplied)

29. The effect and purpose of the February 26, 2019, Memorandum of Agreement is to allow the District to avoid posting or providing notice of vacant positions into which it would have to place Jones, due to her status as a demoted employee. The "involuntarily transferred teachers" are allowed to select positions they want to be transferred and appointed to in a private meeting with the Superintendent and Local 1607, according to their respective seniority. Following the adoption of the February 26 Memorandum of Agreement, the Superintendent met with all the "involuntarily transferred teachers" and allowed them to pick from a slate of vacant positions. The "involuntarily transferred teachers" who were offered this opportunity have less instruction seniority than Jones.

30. The District thus avoided giving Jones notice of the fact that it was depriving Jones of the property interest in reinstatement, or an opportunity to be heard on her entitlement to be placed into a full time position.

31. The Superintendent has designed and effectuated the practice and policy followed by the District with respect to denying Jones of notice and the opportunity to be heard on her entitlement to be placed in a full time position.

8

## COUNT I

## Jones v Bethel Park School District and Joseph Pasquerilla

## Claim Under 42 U.S.C. §1983

## Violation of Jones Rights under 14th Amendment Procedural Due Process Clause

32.   The above averments are incorporated herein as though set forth in full.

33.   As a demoted employee, Jones has a legislatively created and court recognized, state property interest in being reinstated to a full time position with the District, before any teacher with lesser seniority is offered the opportunity to move to a vacant position.

34.   As such, whenever a full time position at the District becomes vacant, Jones is entitled to be placed in that position, by virtue of the provision in the Public School Code.

35.   On numerous occasions since Jones has been demoted, the District has appointed less senior teachers to vacancies, for which Jones has proper certification.

36.   On these occasions, the District had failed to notify Jones of its intent to fill vacancies, failed to notify Jones of her rights under the Public School Code and failed to offer Jones an opportunity to be heard regarding her entitlement to the vacant positions.

37.   When Jones was initially demoted, she was provided with inaccurate information about the scope of the demotion and her rights to be reinstated by her Local 1607 representative.  The inaccuracies were not corrected by the School District.

38. Consequently, Jones was misled about her rights to be restored to a full time position as provided by state law. She was told that she would have to await an opportunity to exercise contractual rights regarding "voluntary transfers" as set out in the CBA. In other words, she was advised that she would have to await the posting of a position and then use the processes set out in the CBA for voluntary transfers. In addition, the CBA contains false and misleading data about Jones reinstatement rights. Jones was never advised that she had an absolute right under the Public School Code to be reinstated to a full time position, before any teacher with lesser seniority was transferred or appointed to that position. Instead, she was purposefully misled about her rights.

39. The confusion sewn by the misinformation given Jones at the time of her demotion was compounded by illegal provisions contained in the CBA. The District and Local 1607 were parties to a CBA which directly contravened the Public School Code's provisions contained in §11-1125.1.

40. The District did not post vacancies when teachers retired or resigned or when reassignments were necessitated due to changing class size. Instead, it used the opportunity of teacher retirements or resignations or class size needs to effectuate what are characterized as involuntary transfers under the CBA.

41. As described, this process is essentially a secretive one, which is conducted by private meetings between the Superintendent and teachers who are to be involuntarily transferred. Consequently, the District followed a pattern of concealing the decision-making process regarding filling positions since Jones' demotion.

42. This involuntary transfer process, as described above, involves the Superintendent deciding to close out programs or classes, and then meeting with the effected teacher privately, with a Local 1607 representative present, and reassigning the teacher to one of the positions opened by retirement or resignation. The District has hired from the outside on only one occasion, since 2011, but did not, on that occasion, notify Jones of her rights, or its intent to deprive her of her rights.

43. When Jones finally became cognizant of the District's subterfuge in 2018, she applied for the opening. She was not selected to fill the position. Instead, it was offered to a less-senior, younger employee, who was facing displacement at the time. The District handled the matter as though it was covered by the involuntary transfer provisions of the CBA, as opposed to the binding command of the Public School Code.

44. At that point Jones requested a hearing from the District, but was not granted one. She asserted her right as the most senior demoted employee to be selected for the position.

45. The District, knowing that Jones believed the Public School Code mandated her reinstatement to full time, before it transferred any other, less senior employee to a full time position, reverted to transferring teachers though secret means. Hence, it adopted, with the Union, the February 26, 2019 Memorandum of Understanding, which allows it to continue the secretive practices of transferring teachers, whom it characterizes as involuntarily transferred.

46. Following the adoption of the February 26th Memorandum of Understanding, the Superintendent closed out several positions, all of which were occupied by teachers with less seniority than Jones. Then the Superintendent, accompanied by a Local 1607 representative, met privately with the affected teachers and allowed them to choose positions that were vacant due to retirement, resignation, or shifting class size.

47. During this process, Jones was not notified that the District and Superintendent intended to transfer less senior teachers to vacant positions and had no intention of offering any of the vacant positions to Jones.

48. This was a calculated course on the part of the Superintendent and District to keep Jones from asserting her right to re-instatement. Jones heard about the process through the "grape vine."

49. As described above, Jones, has been granted a property interest in reinstatement to a full-time position by the Public School Code. 24 P.S. §1125.1.(d)(2):

> (d)(2) Suspended professional employes or professional employes demoted for the reasons set forth in section 1124 shall be reinstated on the basis of their seniority within the school entity. *No new appointment shall be made while there is such a suspended or demoted professional employe available who is properly certificated to fill such vacancy.* (Emphasis supplied)

50. The District has made new appointments, without giving Jones notice, ignoring Jones' property interest in being reinstated before any new appointment is made. The District has acted in this fashion without affording Jones a hearing, or notice of the reasons that it is not reinstating her to a full time position before transferring other teachers, with less seniority, to new full time positions.

51.     Superintendent Pasquerilla has been the architect of the District's treatment of Jones. Pasquerilla has managed the filling of positions in secret meetings with teachers, in order to deny Jones notice of the existence of vacant positions, notice of her right to those positions and the opportunity to be heard. In carrying out the practice, the Superintendent is the final policy maker for the District.

52.     Superintendent Pasquerilla and the District have deprived Jones of her right to procedural due process as guaranteed by the 14th Amendment to the United States Constitution.

53.     Pasquerilla has acted under color of state law in accomplishing this deprivation.

54.     Jones has been injured by the deprivation, as she has been prevented from exercising her rights to reinstatement to a full time position that is guaranteed to her by the Public School Code. The denial of a hearing has resulted in depriving Jones of the opportunity to assert her rights.

55.     The actions of the District and Passquerilla have been deliberate and conceived to deny Jones the procedural due process rights, which are guaranteed to her by the 14th Amendment to the United States Constitution.

56.     Jones has suffered back and future pay loss, as well as loss to her eventual pension entitlement as a result of the misconduct of the School District. Jones has also suffered emotional distress, embarrassment, and other personal injuries due to the illegal conduct of the Defendants.

Wherefore, Jones requests this Court assume jurisdiction of this claim and provide injunctive relief against the District and Pasquerilla depriving Jones of her state law property interest in reinstatement, without providing a hearing, and award her damages, including back pay, compensatory damages and punitive damages against Pasquerilla, and also provide an award of counsel fees in favor of Jones against both defendants.

## COUNT II

### Jones v Bethel Park School District

### Claim under the Age Discrimination in Employment Act

57. The above averments are incorporated herein as though set forth in full.

58. Jones is over 40 and is therefore within the class of persons who fall within the scope of the Age Discrimination in Employment Act.

59. By virtue of the operation of law, 24 P.S. § 11-1125.1, no teacher with less seniority than Jones should have been appointed and placed in any of the open positions, so long as Jones remained in a demotion status.

60. There was a position for a second grade teacher at Jones' home school that became vacant for the 2018-2019 school year.

61. Jones' applied for the position. She signified her interest in the postion and was the most qualified applicant.

62. The School District, however, used the opportunity of filling the position to place a younger, less-senior teacher into the full-time position. This action was taken in spite of the fact that Jones was clearly entitled to be recalled and had vocalized her interest in the position.

14

63. Aside from Jones, the District also overlooked another teacher who was over 40, who had signified her interest in the job.

64. Jones was clearly qualified for the position for which she applied. Indeed, her principal recommended that she be awarded the job.

65. The decision-maker in this regard was the Superintendent, Joseph Pasquerilla. Pasquerilla chose a younger teacher for the position.

66. Pasquerilla was motivated by his interest in fostering a younger work force of tenured employees.

67. Consequently, the District rejected Jones' interest in the full-time position, and kept her in a part-time position.

68. In pursuing this end, the School District allowed full reign to Pasquerilla's decision, which discriminated against Jones, based on her age.

69. Older teachers have been disadvantaged in other job transactions that have occurred in the District.

70. Thereafter, Pasquerilla sought to justify his decision for pretextual reasons.

71. However, it is clear that the School District had an obligation to place Jones in one of the positions that became vacant at the end of the 2017-2018 school year, by virtue of §11-1125.1(d).

72. The School District declined to place Jones in one of those positions due to her age. In other words, as a result of Jones' age, she was not selected for the position.

73. Jones timely filed a charge of age discrimination against the District with the EEOC, and that claim has been cross-filed with the Pennsylvania Human Relations Commission.

74. Jones has satisfied the requisite administrative procedure, as 60 days have elapsed since Jones filed her charge of discrimination.

75. Jones was injured by virtue of the District's action. The position to which she applied was a full time position. She has continued in her part time position, thus losing the opportunity to be paid as a full time teacher.

Wherefore, Jones request this Court assume jurisdiction of this matter under the 29 U.S.C. § 626, and award Jones damages, counsel fees, a transfer to a full time position and such other relief as is just and appropriate.

Respectfully submitted,

/s/ Edward A. Olds
Edward A. Olds, Esquire
PA ID #23601

/s/Jaimie L. George
Jaimie L. George, Esquire
PA ID #309368

OLDS RUSS MARQUETTE & PEACE
1007 Mount Royal Boulevard
Pittsburgh, PA 15223
Phone (412) 492-8975

*ATTORNEYS FOR PLAINTIFF*